McGourin v. Town of DeFuniak Springs et al.—Syllabus.

T. F. MCGOURIN, APPELLANT, v. THE TOWN OF DEFUNIAK SPRINGS, G. P. HENRY AND MALCOLM MCCASKILL, APPELLEES.

1. A court of equity has jurisdiction to enjoin a municipal corporation and its officers from opening up and using as a public street, without the owner's consent, land belonging to an individual, which has not been condemned, dedicated or used as a street or highway.

2. Where the bill alleges that the complainant is seized and possessed of land and the sworn answer, where the oath has not been waived, denies such seizin and possession, the burden is upon the complainant to prove the seizin and possession by sufficient evidence.

3. Where a bill alleges that the respondents are endeavoring to unlawfully subject land of the complainant to public use as a street, and the answer admits the attempt to subject the property to the uses of a public street but avers a dedication of the lands to public use, the averment of dedication being new matter puts upon the respondents the burden of proving such dedication.

4. The intention to dedicate should be considered in determining the existence and character of a dedication of land to public use.

5. Where the owner of land makes a town plat thereof, laying the same out into blocks and lots with intervening streets clearly indicated upon the plat separating the blocks, and conveys lots with reference to such plat, he thereby evinces an intention to dedicate the streets to public use as such.

6. Where a dedication is alleged to have been made by making and filing a map or town plat and by selling lots with reference thereto, and the *locus in quo* appears to be located in a street as clearly indicated upon the map or town plat, the map or plat is evidence of an intention to dedicate the same for public use as a street; but where the *locus in quo* does not appear to be located in a street as clearly indicated upon the plat, the plat unexplained is not evidence of an intention to dedicate.

7. Where it appears that the *locus in quo* is not located in a street as clearly indicated upon a map or town plat made and filed with reference to which lots were sold, that the *locus in quo* was never abandoned and was never accepted or used as a public street or highway, and that it was from a date soon after the filing of the plat for 18 years enclosed and occupied by the owner and those holding under him, such enclosure and occupancy are inconsistent with an intent to dedicate.

8. When a bill for an injunction alleges and the proofs show seizin and possession of land and an attempt by a town and its officers to unlawfully take and subject it to public use

> as a street, and the answer avers a dedication of the land,
> but the dedication is not proven, the injunction should be
> granted.

This case was decided by Division A.

Appeal from the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the
Court.

*Maxwell and Reeves,* for Appellant.

*S. K. Gillis,* for Appellees.

WHITFIELD, J.  This is an appeal from a decree of the
Circuit Court for Walton county dissolving an injunction
and dismissing the bill of complaint filed by the appellant
against the appellees on May 10th, 1902.

The bill in substance alleges that the complainant is
seized and possessed in fee simple of two certain described
parcels of real estate south of the right of way and track
of the Louisville and Nashville Railroad, in the town of
DeFuniak Springs, Florida, which town claims to be a
legaly incorporated town under the laws of Florida, and
to have been such since July, 1901;  that complainant's
title to said land is deraigned by grant from the United
States to the State of Florida about the year 1856;  by
grant from the State of Florida to the Pensacola & At-
lantic Railroad Company about the year 1881;  by deed
from the Pensacola & Atlantic Railroad Company to
Thomas T. and Catherine P. Wright;  by deed from
Thomas T. and Catherine P Wright to the Lake DeFu-
niak Land Company;  by deed to one of the above parcels
to complainants, and by deed to the other parcel to the

West Florida Land Company, and from said last company to complainant; that from about the year 1883, and at the time complainant acquired title to said tracts of land there had been and were standing upon the same valuable houses, which during the whole of said time and to February 16, 1902, were continuously used and occupied exclusively, adversely and solely by the grantors of complainant and their tenants, and by complainant and his tenants for store and office purposes; that on February 16, 1902, the buildings standing on said lands belonging to the complainant were totally destroyed by fire, save and except the brick foundations and pillars; that shortly after the fire aforesaid certain named persons assuming to act as the town council of the said alleged town of DeFuniak Springs, without notice to complainant, passed an ordinance, or what purports to be an ordinance in and by which it was attempted to be enacted that 8th street in the said town should be projected southward across said railroad so as to intersect Wright avenue; that if said 8th street is projected as directed it will pass through and completely occupy complainant's said lots of land, so that he will be deprived entirely of all beneficial use, occupancy or enjoyment of the same, and the same will by such projection of said street be entirely confiscated; that on or about April 15, 1902, by direction of respondent G. P. Henry, the respondent Malcolm McCaskill, claiming to act as the marshal of said town of DeFuniak Springs, and claiming to have and derive ample and full legal warrant and authority for his acts from and by virtue of said pretended ordinance and under and by virtue of the directions then and there given him by the said G. P. Henry, who was then and there claiming to act as Mayor of said town of DeFuniak Springs, to put the said ordinance into execution and effect, entered upon the said lots of land

belonging to complainant, with a great force of labor-
ers and against the  protests of  complainant then  and
there made and utterly tore up and removed  from com-
plainant's said land all of the said  brick  pillars  which
were of great value to complainant  for the purpose  of
erecting new buildings thereon; that ever  since the  de-
struction of said brick  pillars, the  respondents  G.  P.
Henry and Malcolm McCaskill have avowed  their inten-
tion of enforcing said ordinance so  that  complainant's
land shall be converted into and used as a street, and to
this end have repeatedly caused teamsters to drive their
wagons over and across complainant's said  land,  and
both by acts and words have invited and  encouraged the
general traveling public to attempt the use of complain-
ant's said lots of land as a projection and continuation
of the said 8th street; that for the purpose of assuring
the use by the general public of complainant's land as a
street and a projection of said 8th street, the said respond-
ents have collected and  deposited on Baldwin  Avenue
north of complainant's said land, but not on it, a great
quantity of planks and timbers, which complainant is ad-
vised, the respondents intend to use in the construction
of such crossings over the Louisville &  Nashville Rail-
road Company's track, and sidewalks over  complainant's
lands as will invite and cause the general public to use
and occupy complainant's said land as a street, by reason
whereof if the said acts be permitted to be  continued by
the respondents and be not restrained, complainant will
be wholly deprived of his said property; that if the design
and evident intention of  respondents  to  project  8th
street in accordance with  said ordinance through, over
and across complainant's land be  permitted  to  reach
consummation complainant will be deprived of his said
land in the manner in which it has heretofore been used

and enjoyed by him, to-wit: as a site for store and office buildings and such other lawful use as he may put the same to; that the town of DeFuniak Springs and respondents, as complainant is advised, believes and therefore alleges, claim no other warrant or authority for their said acts than is contained in said ordinance; that the said respondents have neither instituted nor caused to be instituted any proceedings for the condemnation to public or other use of complainant's said lands, and have never condemned or caused the same to be condemned, save and except as to the said ordinance might be deemed to be a condemnation, and have never made or offered to make, or tendered to complainant any compensation for the said lands; that complainant, notwithstanding the said ordinance, has recently caused the said land to be enclosed with a substantial fence, which he is advised the respondents threaten to tear down and destroy, and which he believes they will tear down and destroy, and thereby throw open the said land as a public street unless restrained from doing so; that the opening up of complainant's land is not necessary to the good order and benefit of the said town.   An injunction was prayed for and granted.

An answer was filed in which respondents admit that certain buildings were standing on the described property and were destroyed by fire on February 16, 1902; that the ordinance referred to was passed; that respondent McCaskill entered upon the land and removed therefrom all obstructions thereon so that the general public could safely pass thereover, the same being a public highway; but deny that the same was done without authority, and aver that he did so in compliance with his official duties as marshal of the respondent town, it being the duty of the respondents to extend and open the streets, lanes and avenues of the said town, and to cause encroachments,

obstructions, decayed buildings and ruins to be removed therefrom; aver that complainant is not seized and possessed in fee simple of said lands and deny that complainant has any interest therein; aver that in the year 1884 the Lake DeFuniak Land Company through whom complainant alleges that he deraigned title to said lands was seized and possessed in fee simple of section 35, T. 3 N. R 19 W., of which section the land alleged to be owned by complainant is a part; that during the year 1884, the said Lake DeFuniak Land Company, a corporation, made or caused to be made a map or town plat of that part of said section 35 that contains the lands described and other adjoining lands, and filed the same in the office of the Clerk of the Circuit Court for Walton county, Florida, upon which map or town plat were laid off blocks and lots and squares with spaces for roads, streets, alleys, avenues and other public highways for the use of the general public; that said part of said section was laid off into blocks, lots, squares, streets, roads, alleys, avenues and parks, and certain parts thereof such as said streets, roads, alleys, avenues and parks were dedicated to the public for public highways and other public uses; that said Lake DeFuniak Land Company sold and continued to sell for several years thereafter to various and sundry persons, blocks and lots by, according to and with reference to, the said map or town plat, with the blocks, lots, squares, streets, roads, alleys, avenues and parks indicated thereon as aforesaid; that upon said map or town plat the said spaces between the said lots and blocks form no part thereof, but are indicated upon the said map as spaces for streets, roads, alleys, avenues and parks, and are so named and numbered thereon; the alleged continuous, adverse, exclusive and uninterrupted possession of the property by the complainant, his tenants, his alleged

grantors and their tenants is denied; respondents aver that the said property is public property which was dedicated to the public for public uses by the said owner thereof, and was accepted and used as such by the public long before and at the time that it was assumed to give the complainant and his grantor an interest therein other than that of the general public; that said property is included in spaces between the lots and blocks and which form no part thereof, was laid out, surveyed, platted, indicated and appears upon said map or town plat as street, avenue or park property; that the respondents being informed and believing that the said property was and is public property and it being their duty to regulate, extend and open up the same, and to cause encroachments, obstructions, decayed buildings and ruins to be removed therefrom, under and by authority of the town council of the said town, the said property was cleared of obstructions thereon, and this being done the public began to use the same as a public highway, by driving and passing thereover, and continued to so use the same up to and until the same was enclosed by a fence, and they were restrained from further using the same by the order of the court; that a temporary fence, referred to in the bill of complaint as a substantial fence, enclosing the said property, was placed there some time during the night from 10 o'clock p. m. on May 9th, to 5 a. m. on May 10th, 1902; that about day light on May 10th, the said fence was discovered to be there, and that the restraining order was dated May 10th, 1902; that under the protection of said order the said fence has since that time been made more substantial; deny that respondents have threatened to tear down and destroy said fence; aver that the buildings referred to in the bill were built more than ten years after

34 S. C.

510        SUPREME COURT OF FLORIDA.

McGourin v. Town of DeFuniak Springs et al.—Opinion of Court.

the time alleged; that the land dedicated as aforesaid has never reverted to the original owner thereof or to any of its grantees, and that the complainant has no interest or property therein other than that which belongs to every person to use the same as public property as originally intended by the owner thereof and its grantees of the lots and blocks as indicated upon the said map or town plat.

A replication was filed and testimony was taken before a master. At the hearing a decree was rendered dissolving the injunction and dismissing the bill of complaint. An appeal was taken from this decree.

The orders of the court refusing the relief asked and dismissing the bill are among the errors assigned.

The contention of the complainant is that the respondents have attempted, and are threatening, to unlawfully take and subject his real estate to the uses of a public street; and the insistence of the respondents representing the public is that the property was dedicated to public use by a company through whom the complainant deraigns his title, and that it is the duty of the respondents to enforce the rights of the public in the use of the land as a public street.

A court of equity has jurisdiction to enjoin a municipal corporation and its officers from opening up and using as a public street, without the owner's consent, land belonging to an individual, which has not been condemned, dedicated or used as a street or highway. See Baya v. Town of Lake City, 44 Fla. 491, 33 South. Rep. 400.

The bill alleges that the complainant is seized and possessed of the land in controversy and that the respondents are endeavoring to unlawfully subject it to public use as a street. The denial in the sworn answer of the respondents that the complainant is seized and possessed of or had any interest in the *locus in quo,* being directly and

VOL. 51, JANUARY TERM, 1906. 511

McGourin v. Town of DeFuniak Springs et al.—Opinion of Court.

positively responsive to the allegations of the bill, put upon the complainant the burden of proving by sufficient evidence his seizing and possession. The complainant introduced testimony and deeds showing his title and possession. The answer admits the attempt to subject the property to the uses of a public street, but avers the duty of respondents to do so because of a dedication of the lands to public use. The averment in the answer that the *locus in quo* was dedicated to the use of the public and accepted and used as such by the public, being new matter, put upon the respondents the burden of proving such dedication. See Pinney v. Pinney, 46 Fla. 559, 35 South. Rep. 95, and authorities there cited; Parken v. Safford, 48 Fla. 290, 37 South. Rep. 567; Ocala Foundry & Machine Works v. Lester, 49 Fla. 347, 38 South. Rep. 56; Tyler v. Toph, 51 Fla., 40 South. Rep. 624; Mayo v. Hughes, 51 Fla. 495, 40 South. Rep. 499.

The averment as to dedication is that the Lake De-Funiak Land Company, through which company the complainant deraigns his title, in the year 1884, was seized and possessed of section 35, T. 3 N. R. 19 W., of which section the land in controversy is a part, and that said company, a corporation, during the year 1884, made or caused to be made a map or town plat of that part of said section 35 that contains the lands in question and other adjoining lands, and filed the same in the office of the Clerk of the Circuit Court for Walton county, Florida, upon which map or town plat were laid off blocks and lots and squares with spaces for roads, streets, alleys, avenues and other public highways for the use of the general public; that said part of said section was laid off into blocks, lots, squares, streets, roads, alleys, avenues and parks, and certain parts thereof, such as said streets, roads, alleys, avenues and parks were dedicated to the public

for public highways and other public uses; that the said Lake DeFuniak Land Company sold and continued to sell for several years thereafter to various and sundry persons, blocks and lots by, according and with reference to the said map or town plat, with the blocks, lots, squares, streets, roads, alleys, avenues and parks indicated thereon as aforesaid; that the property in controversy was dedicated to the public for public uses by the owner thereof and was accepted and used as such by the public long before and at the time that the owner assumed to give the complainant and his grantor any interest therein other than that of the general public; that said property is included in the spaces between the lots and blocks, and was laid out, surveyed, platted, indicated and appears upon said map or town plat as street, avenue and park property.

The averment is that the property in controversy was platted upon the map as street, avenue and park property, and that it was dedicated to the public for public uses and was so accepted and used. There is no direct averment that the *locus in quo* was platted, dedicated, accepted, and used by the public as a highway or street.

The intention to dedicate should be considered in determining the existence and character of a dedication of land to public use. 9 Am. & Eng. Ency. Law (2nd ed.) 36, 57, 79 and authorities cited; 13 Cyc. 452.

Where the owner of land makes a town plat thereof, laying the same out into blocks and lots with intervening streets *clearly indicated* upon the plat separating the blocks, and conveys lots with reference to such plat, he thereby evinces an intention to dedicate the streets to public use as such. Price v. Stratton, 45 Fla. 535, 33

VOL. 51, JANUARY TERM, 1906.    513

McGourin v. Town of DeFuniak Springs et al.—Opinion of Court.

South. Rep. 644; 9 Am. & Eng. Ency. Law (2nd ed.) 57. See also Florida East Coast R. Co. v. Worley, 49 Fla. 297, 38 South. Rep. 618.

The dedication in this case is alleged to have been made by the making and filing of a map or town plat and by selling lots with reference thereto. If the land in question is located in a street as clearly indicated upon the map or town plat then there is evidence of an intention to dedicate the same for public use as a street.

The map or town plat referred to purports to be a map of Lake DeFuniak showing blocks, lots, streets, avenues and parks thereon with appropriate numbers on the lots and names on the streets, avenues and parks. The place was incorporated as DeFuniak Springs in 1901. Baldwin Avenue runs east and west through the town, parallel with and immediately north of the track of the Louisville and Nashville Railroad; a lake is a short distance south of the railroad track; 8th street runs north and south and intersects Baldwin Avenue, but as shown by the map does not extend beyond Baldwin Avenue to the south.

The town ordinance referred to in the bill of complaint provides that "there shall be established and maintained a public crossing for all purposes across the railroad, Baldwin Avenue and Wright Avenue at 8th street extending south to the south boundary of Wright Avenue." The map or town plat does not show Wright Avenue to be between 8th street and the lake to the south; but there is testimony that Wright Avenue is now so located that if 8th street is projected across the railroad track south as required by the ordinance it will include the land in controversy and will intersect Wright Avenue.

The map appears to have been filed of record in 1886, but it is shown to have been in existence in 1884, and that deeds made as early as May, 1884, referred to it in de-

scribing property conveyed. There is undisputed testimony that the *locus in quo* was never, prior to the fire on February 16, 1902, used as a street or highway; that in December, 1884, a buiulding was erected on the *locus in quo* and subsequently other buildings were erected thereon and all remained thereon until the fire in 1902; that a fence was built around a large tract including the *locus in quo* by the owner thereof in November, 1884, and that this fence prevented the use of the lands in dispute as a street; that when this fence was removed the land in dispute was inclosed by another fence, which prevented its being used as a street, and remained so inclosed until the fire in February, 1902, which destroyed the buildings that were erected on the lands. The supposed dedication is alleged to have been made "during the year 1884" by making and filing a map or town plat and by selling lots with reference thereto. It does not appear from the map or town plat that the *locus in quo* is in any of the spaces indicated thereon as a street or avenue, and the testimony shows that it was inclosed by a fence and occupied by the complainant and his predecessor in title at least from November, 1884, to the fire in 1902. The inclosure and occupancy as stated show there was no abandonment of the land to public use as a highway, and such enclosure and occupancy are entirely inconsistent with an intention to dedicate the lands as a highway. There is no testimony that this land was in any way accepted by the public as a highway or street or used as such at any time before or after it was inclosed by the fence in November, 1884, and prior to the fire in 1902. The map or town plat has upon it about where the *locus in quo* should appear thereon, irregular designs with narrow spaces between them, and there is testimony that these irregular designs upon the map or town plat were supposed to represent flower beds

in a park. No figures or letters appear upon these designs or upon the spaces between them, which spaces are irregular and narrower than the spaces on the map designated as streets or avenues. There is testimony that in selling the lots north of the *locus in quo* and north of the railroad, representations were made that the *locus in quo* would remain open so as not to obstruct the view of the lake to the south and east of the lots so sold. Even if this be true it does not show the dedication of the lands in controversy as a highway or street for public use; and if purchasers of lots have rights under such conditions and representations they are not affected by this suit. The respondents representing the public rest their justification upon the dedication of the lands for public use as a street and no such dedication is shown by the proofs.

The decree is reversed at the cost of the appellees and the cause is remanded with directions to enter a decree in accordance with the prayer of the bill.

SHACKLEFORD, C. J., and COCKRELL, J., concur.

TAYLOR and HOCKER, JJ., concur in the opinion.

PARKHILL, J., disqualified.